# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY BETH HENDERSON, )
)
       **Plaintiff,** )
)
       v. )   Case No. CIV-17-287-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
       **Defendant.** )

## OPINION AND ORDER

The claimant Mary Beth Henderson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-eight years old at the time of the administrative hearing (Tr. 36). She has a high school equivalent education, social service training, and has worked as an activity director (Tr. 38, 44). The claimant alleges she has been unable to work since September 16, 2013, due to osteoarthritis, osteoporosis, congestive heart failure, obesity, high blood pressure, hypothyroidism, spurs in her feet, depression, and migraines (Tr. 158).

**Procedural History**

On October 21, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 272-80). Her application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 26, 2016 (Tr. 15-25). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of medium work, *i. e.,* she could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; could sit/stand/walk for six hours during an eight hour work day; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and could occasionally reach

overhead (Tr. 20). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as an activity director (Tr. 25).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the opinions of treating physician Dr. Richard Helton and consultative examiner Dr. Parind Shah. The Court agrees that the ALJ did not properly analyze Dr. Helton's opinion, and further failed to properly account for the claimant's non-severe impairments in formulating the RFC, therefore, Commissioner's decision must be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's degenerative disc disease, obesity, congestive heart failure, hypertension, mild osteoarthritis of the knees, history of deep vein thrombosis and pulmonary embolism, thyromegaly, and history of mitral valve dysfunction were severe impairments, but that her migraines and depression were non-severe (Tr. 17-18). The medical evidence relevant to this appeal reveals that Dr. Chris Codding regularly treated the claimant for neck pain, back pain, and bilateral knee pain between August 2006 and November 2010 (Tr. 244-59, 393-405). An MRI of the claimant's lumbar spine dated March 16, 2010, revealed a small circumferential disc bulge superimposed on a grade I isthmic anterolisthesis causing moderate bilateral foraminal stenosis at L5-S1 and a moderately dehydrated intervertebral disc at L2-3 (Tr. 257). X-rays of the claimant's knees taken on November 18, 2010, revealed slight patellar tilting and patellofemoral osteoarthritis in her right knee, and mild patellofemoral arthritis in her left knee (Tr. 245).

Between November 2011 and November 2015, Dr. Richard Helton treated the claimant for chronic migraines, chronic pain, peripheral edema, deep vein thrombosis, gastroesophageal reflux disease, and high blood pressure (Tr. 286-92, 424-55, 487-88). Dr. Helton did not document physical examination findings at every appointment, but they were generally normal when documented (Tr. 286-92, 445, 451, 454). On October 29, 2015, Dr. Helton completed a Medical Source Statement ("MSS") wherein he opined that in an eight-hour work day, the claimant could stand/walk for two hours total and sit for three hours total (Tr. 459-60). He further opined that the claimant could occasionally lift less than ten pounds, finger, grasp, and handle; rarely lift ten pounds and stoop/bend; and never lift anything above twenty pounds or crouch (Tr. 459). Dr. Helton indicated the claimant would frequently experience pain severe enough to interfere with attention and concentration needed to perform even simple work tasks, and would be absent from work more than four days per month (Tr. 460). In support of his opinions, Dr. Helton stated that he had treated the claimant monthly since 2000, and noted that her diagnoses included osteoarthritis, uterine cancer, hypertension, deep vein thrombosis, and peripheral edema (Tr. 459).

The claimant established care at Comprehensive Pain Center ("CPC") on November 12, 2012, and reported pain in her neck, low back, and legs (Tr. 313-20). At this initial visit, Dr. Terrell Phillips noted the claimant walked with an antalgic gait, could heel and toe stand without difficulty, had full range of motion and no decreased sensation in her upper and lower extremities, and had tenderness in the paravertebral muscles of her cervical and lumbar spine (Tr. 314). He diagnosed the claimant with chronic neck pain

and chronic low back pain (Tr. 314). Thereafter, the claimant consistently reported that her medication increased her daily activity and improved her quality of life, but also consistently reported continued neck pain that radiated to her left shoulder (Tr. 304-12, 342-47, 406-15). Erin Brooks, a physician assistant at CPC, also treated the claimant and found limited range of motion in all directions in the claimant's neck as well as bilateral paraspinal muscle spasms, but her examinations were otherwise normal (Tr. 406-15).

Consultative examiner Dr. Parind Shah conducted a mental status examination of the claimant on March 6, 2014 (Tr. 329-30). Dr. Shah indicated that the claimant had no formal mental health treatment, but could benefit from therapy to process her grief issues which trigger her low moods (Tr. 329). He assessed the claimant with, *inter alia*, major depression, recurrent, moderate, without suicidality or psychotic features, with physical conditions (Tr. 330).

On March 8, 2014, Dr. Robert Cortner conducted a consultative physical examination of the claimant (Tr. 332-40).[2] He found the claimant had an enlarged thyroid gland, crepitus in both of her knees, and a two-inch round nodule on her left lateral lower extremity that was painful and very tender to palpation (Tr. 334). The claimant's cervical spine was tender with full range of motion, her thoracic spine was non-tender with full range of motion, and her lumbosacral spine was very tender to palpation with muscle spasms of her lumbar spine paraspinal muscles present, but full range of motion (Tr. 334).

---

[2] Below Dr. Cortner's signature line, his name is typed out as "Robert Harold Corner, JR, DO." This appears to be a typo as the heading on the first page of his opinion, the transcript note above his signature, and his signature all reflect that his name is Dr. Robert Cortner (Tr. 332, 334). The claimant, Commissioner, and ALJ, however, all refer to Dr. Cortner as Dr. Corner.

He assessed the claimant with, *inter alia,* chronic low back pain, chronic knee and hip pain, obesity, and lumbar paraspinal muscle spasms (Tr. 334).

State reviewing psychologist Dr. Joan Holloway completed a Psychiatric Review Technique ("PRT") on April 24, 2014, wherein she found that the claimant's affective disorders were non-severe (Tr. 54-56). Her findings were affirmed on review (Tr. 67-69).

On April 29, 2014, state agency physician Dr. Nancy Armstrong reviewed the record and found that the claimant could perform the full range of medium work (Tr. 57-58). Her findings were affirmed on review (Tr. 70-72).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony, as well as most of the evidence contained in the medical record (Tr. 24-35). He gave great weight to the state agency physicians' opinion that the claimant could perform medium work, but further limited her to occasional overhead reaching due to her degenerative disc disease, and to occasional climbing, balancing, stooping kneeling, crouching, and crawling due to her obesity (Tr. 23-24). The ALJ gave little weight to Dr. Helton's opinion because: (i) the claimant's representative included a note on the cover sheet transmitting the MSS form that stated "20# and under works," giving the appearance that Dr. Helton relied on the law firm in finding that the claimant could only lift and/or carry twenty pounds; (ii) Dr. Phillips found full range of motion in the claimant's upper and lower extremities and no decreased sensation at the claimant's initial CPC visit; (iii) his opinion that the claimant could rarely bend was inconsistent with Dr. Cortner's examination finding that the claimant had full range of motion in bending; and (iv) his checklist-style form included conclusory functional limitations without any rationale (Tr. 25). As to Dr. Shah's opinion, the ALJ

summarized his consultative findings related to the claimant's intellectual functioning, abstract reasoning, and judgment at step two when he determined her depression was nonsevere but did not mention or discuss his opinion at step four and did not assign it any weight (Tr. 18, 21-25).

The medical opinions of treating physicians are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in §[§] 404.1527 [, 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he

must . . . give specific, legitimate reasons for doing so[,]" *Id*. at 1301 [quotations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight Dr. Helton's opinions as to the claimant's functional limitations. Dr. Helton's MSS contained functional limitations that the ALJ rejected, in part, because he found the medical record reflected that the claimant had full range of motion in her upper and lower extremities and experienced no decreased sensation (Tr. 24). In making such findings, however, the ALJ overlooked substantial evidence related to the claimant's knees and neck, including Dr. Cortner's consultative findings of bilateral knee crepitus and the presence of a painful nodule on her left leg, her consistent reports of neck pain radiating into her left shoulder despite taking pain medication, Dr. Cortner's finding of cervical spine tenderness, Dr. Phillips' finding of cervical spine tenderness, and Ms. Brooks findings that the claimant had limited range of motion in all directions in her cervical spine (Tr. 245, 314, 334, 342-47, 406-15). This is clearly relevant because the claimant's knee and neck impairments have a direct effect on her ability to lift, carry, stand, walk, and sit. Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to his finding of non-disability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v.*

*Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Furthermore, the ALJ is required to consider the effects of *all* the claimant's impairments – severe and non-severe – and account for them in formulating the claimant's RFC at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. In this case, the ALJ failed to mention the claimant's non-severe migraines and depression at step four entirely, and further failed to properly assess the combined effect of all the claimant's impairments in assessing the RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain

why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of all the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**